## Case No. 12,697.

### SHAFFER v. FRITCHERY et al.

[4 N. B. R. 548 (Quarto, 179).] [1]

District Court, D. Maryland. 1871.

BANKRUPTCY—JUDGMENTS—WHEN VOID—ACTS OF BANKRUPTCY—NOTES FOR EXCESS OF INTEREST.

1. Judgments are not to be set aside as fraudulent and void merely because the plaintiff has exacted a high rate of interest, especially when at the time of entering of the judgments, valuable collateral securities were surrendered to debtor by plaintiff for a large part of said judgments.

[Cited in Davis v. Anderson, Case No. 3,623.]

2. A judgment is fraudulent and void, if the plaintiff knew at the time it was entered up, that the debtor had executed a deed of assignment to said plaintiff and another party.

3. In a mercantile community the non-payment of a note at maturity by the maker, who is a merchant or trader, is prima facie evidence of insolvency, and warrants a decree in bankruptcy. In an agricultural country the rule is different, and there no man is suspected of being insolvent from the fact alone that his notes are not paid promptly at maturity.

4. Notes given for the excess or bonus over legal interest are not provable in bankruptcy, and must be surrendered to the assignee.

[This was a bill by Shaffer against Fritchery & Thomas, praying that certain judgments be set aside.]

GILES, District Judge. The bill in this cause was filed 27th of September, 1869. It sets forth that the said Shaffer, being insolvent, gave to respondents the orders or warrants to enter four judgments against him in the circuit court for Carroll county, at the several times mentioned in the said bill of complaint, the first one being entered on the 5th day of February, 1869, and which was for the sum of six thousand dollars; the second one on the 1st of April, 1869, for three thousand and ninety-seven dollars and fifty-seven cents; the third one on April 12th, 1869, for three thousand one hundred and nineteen dollars; and the fourth, and last one, on 14th of April, 1869, for five hundred and thirty dollars. The bill charges that these judgments were confessed by Shaffer, with intent to give a preference to said defendants over his other creditors, and to defeat the operation, and in fraud of the provisions of the bankrupt act [of 1867 (14 Stat. 517)]; and that, when said judgments were entered, the said defendants had reasonable cause to believe that a fraud on this act was intended, and that Shaffer was insolvent. The bill also charges that said judgments were confessed for a much larger amount than Shaffer owed to the defendants; the amount of said judgments being about thirteen thousand dollars, and the true indebtedness of said Shaffer to defendants was less than eight thousand dollars; and that said judgments are fraudulent in fact, as well as void under the 35th and 39th sections of the bankrupt act. And it concludes with a prayer that the said judgments may be decreed void, and be set aside; or, if the court should decide that they have no authority to pass such a decree, that the defendants may be restrained from asserting any priority under them to payment from the assets of said bankrupt's estate, and for such order and further relief as the case may require. The answer denies all the material allegations of the bill. They admit the confession of the four judgments mentioned in the said bill, but they deny that at the several times said judgments were confessed, they had any reasonable cause to believe, or that they, in fact, believed that said Shaffer was insolvent, and that the same were confessed with intent to give them a preference; and they also deny that the said judgments do not represent truly the amount of the indebtedness of said bankrupt to them, but that said bankrupt was then and is still justly indebted to them in the several amounts stated in said judgments, and they deny all charges of fraud. The answer then states the course of dealing between the said bankrupt and these respondents (who were bankers and brokers in Westminster, in this state), and the origin of said indebtedness and its character when the said several judgments were confessed; and the said answer further states that when said first judgment was confessed, these defendants surrendered to Shaffer certain securities, being the indorsements of other parties, and which securities they regarded as ample, being satisfied with the said judgment in lieu thereof; and the answer insists that said judgments are valid and a lien on the real estate of said bankrupt, and they pray that the court will so decree, and that, if the said real estate shall be sold by the assignee, that he shall be directed to pay off the said judgments, etc.

Under the issues, therefore, clearly made by the said bill and answer, a large amount of testimony had been taken, and the case has been fully and ably argued by learned counsel. At the commencement of his argument one of the learned counsel for the defendants suggested a doubt whether, at this time, the court has any jurisdiction of this case to decree the relief prayed. But the court has no doubt on this point. When this bill was filed, the real estate had not been sold by the assignee; and if he believed that there were liens upon the same which were fraudulent and void, it was his duty to have them removed; and although this court had passed an order, on the petition of the said assignee, on the 10th day of September, authorizing him to sell the real estate of the said bankrupt, free and discharged from the liens on the same, and from the proceeds of sale to discharge the liens thereon, there was still more necessity that the power of this court should be invoked to ascertain what liens existed, and to pass upon their validity. Whether this authority of the court is asked by bill

1 [Reprinted by permission.]

in equity or by summary petition, can make no difference; as, under the 1st section of the bankrupt act, this court has full jurisdiction over the subject-matter. Still, I think a bill in equity is the most suitable remedy. There are four judgments sought to be set aside in this case, of different dates; and it might well be that one or more might be valid, and others fraudulent and void. It will be necessary, therefore, to examine the evidence in relation to each one separately. The first one was entered up on the 5th of February, 1869, for six thousand dollars. Now, at this time, was Shaffer insolvent? I have no doubt that he was. His whole assets, as ascertained by the subsequent sales, were only about twenty-five thousand seven hundred and fifty dollars, while his indebtedness must have been at least over thirty-five thousand dollars, and it might have been much more, for we find him, on the 13th of April, 1869, making a deed of trust to certain parties for the benefit of his creditors; and there is no proof that between the 5th of February and the 13th of April he met with any losses in his business or otherwise.

Then the next question is, when this judgment was taken had defendants reasonable cause to believe that Shaffer was insolvent, and that by the confession of said judgment a fraud on the bankrupt act was intended? Now, it is proved, beyond any doubt, that up to the execution of the deed of trust Shaffer was in good credit in the county in which he resided; that he owned a large real estate, and was computed to be worth from twenty-five to thirty thousand dollars; that prior to the first judgment of defendants the only debt of his of which the community generally could have had any knowledge, were Cover's judgment for four thousand dollars and the mortgage on the mill property for two thousand six hundred and fifty-nine dollars and forty-one cents, making six thousand six hundred and fifty-nine dollars and forty-one cents. Now, in all the facts attending the transactions between Shaffer and defendants, what cause was there to suspect the solvency of Shaffer, and that he contemplated a fraud on the bankrupt act? The fact that he did not pay his notes punctually at maturity, and that he agreed to pay heavy interest on the cash advanced to him, are relied on by the counsel for the complainant to show a knowledge by the defendants of Shaffer's true condition. Now, if these transactions had taken place in a mercantile community, or the bankrupt had been a merchant, the non-payment of his note would have been prima facie evidence of insolvency, and would have warranted a decree in bankruptcy against him. And if defendants, after such non-payment, took from him a judgment to secure either past indebtedness, or that, with a present advance, they would have done so at their peril. But in an agricultural community the rule is different. And it is proved in this case, that in the county where

these parties resided, the general experience is that notes are not paid punctually at maturity; and that no man is suspected of being insolvent from the fact alone that his notes are not punctually paid. Now as to the fact of the charge of three per cent. a month for many of the advances made by defendants, this, if standing alone, would certainly raise a presumption of defendants' knowledge of the embarrassed condition of Shaffer, sufficient to put them on inquiry. But this presumption is removed when we find them continuing to make advances to Shaffer of large sums, even so late as the 12th of April, 1869. It only shows that defendants were very sharp in all their transactions, and believing that they were dealing with a man who was responsible, with large real estate, but much in want of cash, they took advantage of his necessities to get a large interest for their money. Also, it appears from the evidence that when the first three judgments were taken, the defendants surrendered to Shaffer valuable collateral security which they held for a large part of said amounts. According to my view of the evidence, I cannot, therefore, set the first three judgments aside as fraudulent and void. The last judgment was entered up on the 14th of April, 1869. On the evening of the 13th of April a deed of trust of all his property had been executed by Shaffer to one of the defendants and another party, with the knowledge of the said defendant. With this knowledge defendants, on the 14th of April, 1869, caused to be entered the judgment of that date, and I, therefore, hold it to be fraudulent and void, and will so decree. It remains only for me to ascertain how much money was actually advanced to said Shaffer by defendants, and to secure the payment of which the remaining judgments were confessed; for that amount alone, with six per cent. interest on the same, will these defendants be permitted to prove said judgments against Shaffer's estate, and to obtain judgment of the same, according to the legal priority of said judgments. By the laws of this state, where the defense of usury is taken, the party taking it forfeits only the excess above the sum loaned and the legal interest (six per cent.) on the same. Now, this is a matter of no slight difficulty, from the mass of evidence in this case, and from the want of recollection of Shaffer upon the subject; and also from the fact, apparent on the books of the defendants, given in evidence on the call of the complainant, that sometimes the discount was paid in cash, but more generally notes were taken for the same, which were renewed from time to time, and were subsequently merged in the large notes for which the judgments were entered. This interest seems to have been usually three per cent. a month. If the learned counsel can agree upon the amount of the interest thus charged beyond six per cent., I will deduct the same from the three judgments and per-

mit the defendants to prove the same for the balance. If they cannot agree, I will ascertain the amount myself, from the best data I can obtain from the evidence, which is anything but clear on this point.

The three bonus notes filed in this cause the court holds to be void, and they will be decreed to be surrendered to the assignee.